■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SARENA FALZONE, Also Known as SAREENA FALZONE, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY RICKS, Also Known as TIMOTHY RICK, Appellant.— Judgment, Supreme Court, Bronx County (Steven L. Barrett, J.), rendered November 14, 1986, which after jury trial convicted both defendants of one count each of promoting prostitution in the second degree and endangering the welfare of a child, and sentenced Falzone to concurrent prison terms of 3⅓ to 10 years and 1 year, respectively, and defendant Ricks to concurrent prison terms of 6 to 12 years and 1 year, respectively, unanimously reversed, on the law, and remanded for a new trial.

The defendants' conviction arises from their coercion of a 14-year-old girl to engage in prostitution. The victim testified at the trial, extensively describing the acts of the defendants. At issue on this appeal is the prejudicial effect of additional evidence elicited by the People at the trial in violation a pretrial ruling—the testimony of a social service worker who described not only her first hand knowledge of the victim, but

also her detailed experience regarding child prostitutes in general.

The complaining witness, Maria Tennant, testified as to her upbringing and how she came to know the defendants. After running away from a succession of foster homes, she lived with a friend in an abandoned building in The Bronx, and then stayed with other friends at a welfare hotel in the Times Square area. At this time, Maria began to regularly visit the office of Trudee Able-Peterson, director of a social service project helping troubled youths in the Times Square area. Eventually, Maria moved in with the mother of a friend in The Bronx. Maria became acquainted with defendants, who lived in another apartment in that building, and often baby-sat for their children. When Maria began having difficulties with the friend's mother and was asked to leave, the defendants took her in.

Maria then testified as to the incidents leading up to the defendants' arrest. After she had lived with defendants for some months, they told Maria that they needed more money to meet their bills, and coerced her into working as a prostitute on their behalf. The defendants dressed her provocatively, gave her instructions on how to behave with customers, and took her to the Hunts Point Market area where they allegedly forced her to work as a prostitute for as many as six nights per week. Maria would give the money she made to the defendants. After being arrested twice for prostitution and being briefly incarcerated, Maria returned to the Holland Hotel in order to escape from the control of defendants. She reported her story to Able-Peterson, who later accompanied her to the police, to whom the instant complaint was made.

At the trial, the People sought to introduce the testimony of Ms. Trudee Able-Peterson as an expert witness on the subject of the syndrome of child prostitution. Prior to the trial, the court held a *Frye*-type hearing *(Frye v United States,* 293 F 1013) to determine whether child prostitution is a subject for which such expert testimony may be received, and whether Ms. Able-Peterson was a qualified expert to present such testimony.

After a lengthy hearing, the court held child prostitution not to be an area appropriate for expert testimony based upon its finding that there is neither sufficient scientific evidence nor a body of academic research describing a syndrome or cluster of syndromes in child prostitution cases such as exists with respect to the rape-trauma syndrome or the battered wife

and battered child syndromes. *(See generally, Matter of Nicole V.,* 71 NY2d 112, 120-122.)

The court also held that Ms. Able-Peterson did not qualify as an "expert" because, despite her vast experience in working on the streets with child prostitutes, she had not studied the field and did not have the necessary academic or scientific credentials for expert status.

While ruling that Ms. Able-Peterson could not testify as an expert witness on the subject of child prostitution, the court held that she would be permitted to testify as to observations she made of Maria Tennant at various times and as to her own experiences, and the kinds of people she had observed over the years, but the court explicitly stated that she could not draw conclusions of an expert nature.

Since the People may not appeal from the court's rulings with respect to either the finding that child prostitution is not an appropriate area for expert testimony or that Ms. Able-Peterson did not qualify as an expert witness, they are bound thereby and those rulings, in such posture of the case, are per force beyond our review *(see,* CPL 450.20; *but cf., People v Siu Wah Tse,* 91 AD2d 350).

Notwithstanding the trial court's ruling, it is clear that when Ms. Able-Peterson eventually testified at the trial, her testimony was not limited to the areas delineated by the court's ruling. Instead, over repeated objection, she was invited to testify at length as to the work of her agency with runaway children in the Times Square area, about the common behavioral characteristics of child prostitutes, and about the general nature of the dependent and controlled relationship of a child prostitute to his or her pimp.

The defendants' conviction must be reversed because of this testimony. While the witness was expressly held not to be an expert witness, the testimony that she was permitted to present was precisely of the type that an expert witness would give. Her lengthy exposition on the nature of the relationship between child prostitutes and their pimps and the behavioral characteristics of child prostitutes in general was extremely prejudicial to defendants in that it provided a type of "expert" corroboration of the testimony of the complaining witness by conveying to the jury that it was likely to be true because it was consistent with the general behavioral pattern of child prostitutes, particularly with respect to the issue of not promptly complaining of their abuse to the authorities or others. Since the credibility of the complaining witness was

the pivotal issue in the case, to allow such bolstering testimony by one expressly held not to be an expert, about issues held not to be appropriate for expert testimony, was improper and deprived defendants of a fair trial. Concur—Murphy, P. J., Kupferman, Carro, Ellerin and Wallach, JJ.